UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

S.H., a minor, by her
guardian ad litem Chantal
Holt, WILLIAM KENNETH HOLT
and CHANTAL HOLT,

                    Plaintiffs,

        v.

UNITED STATES OF AMERICA,

                    Defendant.

No. CIV. S-11-1963 LKK DAD

**ORDER**

        Plaintiff S.H. (through her Guardian ad Litem), is a minor
child living with "severe and permanent brain damage,
neurological impairment and other injuries."  First Amended
Complaint ("Complaint") (ECF No. 6) ¶ 2.  Plaintiffs – S.H. and
her parents, William Kenneth Holt and Chantal Holt – allege that
S.H.'s injuries are the result of negligent medical care and
advice given her mother by medical personnel at Travis Air Force
Base ("Travis" or "Travis AFB") and Edwards AFB.  Complaint
¶¶ 8-11.
        Plaintiffs are suing the United States for the negligence of

1

1  the Travis and Edwards medical personnel, and the resulting

2  injuries to S.H., under the Federal Tort Claims Act (FTCA), 28

3  U.S.C. § 1346(b), which waives the government's sovereign

4  immunity for tort claims.   The government moves for summary

5  judgment, on two grounds.   First, it asserts that the claim arose

6  in Spain, and therefore is not subject to the FTCA's waiver of

7  sovereign immunity, citing the "foreign claim" exception of 28

8  U.S.C. § 2680(k).   Second, the government asserts that plaintiffs

9  cannot show the causation necessary to prove their tort claim.

10     **I.   BACKGROUND**

11          After plaintiff Chantal Holt delivered her first child

12  prematurely at Travis AFB, the medical personnel there

13  "negligently failed to inform" her "of her need for specialized

14  care and treatment in the event of a future pregnancy," failed to

15  advise her of "her continuing vulnerability to and likelihood of

16  uterine irritability/pre-term labor injury with consequent

17  premature birth during subsequent pregnancies," and failed "to

18  include her in the Air Force Exceptional Family Program."

19  Complaint ¶ 8.[1]   Ms. Holt's second child was also born

20  prematurely.   Complaint ¶ 9.

21          Ms. Holt's pregnancy with S.H., her third child, was

22  confirmed by medical personnel at Edwards AFB on November 2,

23  2004.   Id.   Despite Ms. Holt's two prior premature births,

24  Edwards medical personnel again negligently failed to advise,

---

25  [1] The court recites the allegations of the Complaint here because

26  the defendant's motion does not challenge them, nor offer any
   evidence to put them in dispute.   The motion is instead premised

27  on the "foreign claim" exception to the FTCA, and upon a lack of
   causation, neither of which depend upon the truth or falsity of

28  these allegations.

treat and prepare her for this pregnancy (as set forth above),
even though she was at high risk for yet another premature birth.
Id.

Unlike her earlier pregnancies, plaintiff was pregnant with
this third child at a time when her husband was being transferred
to duty in Spain, and she was considering moving there with him
while still pregnant.  See Defendant's Separate Statement of
Material Facts ("Material Facts") (ECF No. 34-2) ¶¶ 1-6, 9.
Plaintiffs accordingly allege that Edwards personnel engaged in
additional negligence by "permitting" her to be deployed
overseas, referring her to an overseas medical facility that was
"not competent to handle high risk pregnancies" while
misrepresenting the facility's capabilities, failing to institute
"Overseas Travel Screening procedures," failing to refer her for
"High Risk OB Care," and failing to employ appropriate
diagnostics, procedures, treatments, referrals and medications to
deal with a premature birth, or to prevent the birth from being
premature.  Complaint ¶ 10.

Ms. Holt gave birth to S.H., prematurely and by C-section,
in Spain.  Material Facts ¶¶ 9 & 11.  Plaintiffs suffered
injuries arising from the premature birth, and the failure of
Travis and Edwards personnel to properly treat, medicate, prepare
and warn Ms. Holt regarding the risks attendant to her pregnancy
with S.H., as alleged above.  Complaint ¶¶ 8-10, 12, 14 & 16.

## II.   STANDARDS – SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (it is the movant's burden "to demonstrate that there is 'no genuine issue as to any material fact' and that the movant is 'entitled to judgment as a matter of law'"); Walls v. Central Contra Costa Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (same).

Consequently, "[s]ummary judgment must be denied" if the court "determines that a 'genuine dispute as to [a] material fact' precludes immediate entry of judgment as a matter of law." Ortiz v. Jordan, 562 U.S. ___, 131 S. Ct. 884, 891 (2011), quoting Fed. R. Civ. P. 56(a); Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (en banc) (same), cert. denied, 132 S. Ct. 1566 (2012).

Under summary judgment practice, the moving party bears the initial responsibility of informing the district court of the basis for its motion, and "citing to particular parts of the materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that show "that a fact cannot be ... disputed."  Fed. R. Civ. P. 56(c)(1); Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact") (citing Celotex v. Catrett, 477 U.S. 317, 323 (1986)).

A wrinkle arises when the non-moving party will bear the burden of proof at trial.  In that case, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387.

If the moving party meets its initial responsibility, the

burden then shifts to the non-moving party to establish the existence of a genuine issue of material fact.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-86 (1986); <u>Oracle Corp</u>., 627 F.3d at 387 (where the moving party meets its burden, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial").  In doing so, the non-moving party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c)(1)(A).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>, 653 F.3d at 966.  Because the court only considers inferences "supported by the evidence," it is the non-moving party's obligation to produce a factual predicate as a basis for such inferences.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts ....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87 (citations omitted).

**III. ANALYSIS – REQUEST TO EXCLUDE EXPERT WITNESSES**

The government moves to exclude all testimony and opinions of four of plaintiffs' experts – Drs. Thorp, Schuler, Meis and Null – pursuant to Fed. R. Civ. P. 37(c)(1) & (d).  ECF No. 35.

**A.    The History of the Expert Deposition Dispute.**

On February 11, 2013, plaintiffs filed their expert disclosures, naming nine (9) experts, along with their expert reports and curricula vitae ("CV's").   Declaration of Martin M. Berman, dated August 26, 2013 ("Berman Decl.") (ECF No. 37-1) ¶ 6 & Exh. 6 (ECF No. 37-7).   The court notes that plaintiffs filed these expert reports three months early, as they were not required to file them until June 2014, according to the Pretrial Order (see ECF No. 24).   Nevertheless, having received the reports early, the government was free as of that date – February 11, 2013 – to notice the depositions of the designated experts at any time.   Fed. R. Civ. P. 26(b)(4)(A) (the expert deposition "may be conducted only after the report is provided").   Indeed, plaintiffs assert that they verbally offered to make the experts available for depositions at that time, but that the government demurred, preferring "to defer their depositions until Spring." Berman Decl. ¶ 7.   As the government correctly notes however, it did not know which of plaintiffs' nine disclosed experts would actually be called to testify.

On June 3, 2013, plaintiffs filed their (final) designation of experts, as required by the Pretrial Order.   ECF No. 30 ("Plaintiffs' Final List of Experts To Be Presented At Trial"). This designation again identified the nine (9) experts previously disclosed on February 11.   Id.   The government however, still did not seek to depose plaintiffs' experts.   Instead, it waited more than five (5) additional weeks, with the discovery deadline closing in, before serving notice that it wished to depose four of the experts.

On July 10, 2013 – five business days before the discovery cut-off date – the government finally served notice that it wished to depose four of plaintiffs' designated experts.  Berman Decl. ¶ 15.  Even though the government knew that the four experts "were located across the country, and spread out from New Mexico to North Carolina," it gave plaintiffs two (2) business days' notice for two expert depositions to be taken on July 15, 2013 in Sacramento, CA.  See Declaration of Gregory T. Broderick dated August 12, 2013 ("Broderick Decl.") (ECF No. 35-1) ¶¶ 3 & 4, & Exh. 2.  At the same time, it provided four (4) business days' notice for the two remaining expert depositions to be taken on July 17, 2013 in Sacramento.  Broderick Decl. Exh. 2.  To ameliorate the admittedly "inconvenient" timing, the notice states that the experts can appear in their local U.S. Attorneys' offices by video-conferencing.  See id.

In e-mail communications regarding the timing of the depositions, the government was clear that in its view, "it would be better for all involved" if, "due to the looming dates," plaintiffs would agree to have the depositions occur "later in July."  Berman Decl. Exh. 14 (ECF No. (37-15).  At no time did the government offer plaintiffs any explanation for its delay in noticing the depositions and for providing such short notice.  Nor does it offer any on this motion to exclude the experts' testimony.  To the contrary, its only explanation to plaintiffs seems to be that it believed it could get a court order extending the discovery deadline so that the expert depositions could be taken later in July.  See Berman Decl. Exh. 17 at 2.

Plaintiffs declined to provide the expert witnesses on the

7

1  dates noticed for their depositions.  Plaintiffs advised the

2  government that they could not do so on such short notice, and

3  suggested if the government needed more time to serve a

4  reasonable deposition notice, it would have to seek relief from

5  the court.  Berman Decl. ¶ 17.  No later than July 12, 2013,

6  plaintiffs had made it clear to the government that they

7  considered the notice to be unreasonable, and that they would not

8  produce the experts on the dates requested.  The government

9  acknowledged as much in an e-mail to plaintiffs on that date.

10  Berman Decl. Exh. 17 at 2.  Nevertheless, neither side took any

11  action to formally protect its position.  The government did not

12  move to compel the depositions, and plaintiffs did not seek a

13  protective order.

14       **B.    Exclusion Standards.**

15       The government relies on Fed. R. Civ. P. 37(c)(1) and (d)

16  for its motion to exclude the evidence from plaintiffs' four

17  designated experts.

18            **1.    Rule 37(c)(1).**

19       Rule 37 provides:

20            If a party fails to provide information or
            identify a witness as required by Rule 26(a)
21            or (e), the party is not allowed to use that
            information or witness to supply evidence on
22            a   motion … unless   the   failure   was
            substantially justified.

23

24  Fed. R. Civ. P. 37(c)(1) (emphasis added).

25       The government fails to identify any information not

26  provided, nor any witness not identified that was required to be

27  identified, by Rule 26(a) or (e).  Rule 26(a), as it applies

28  here, governs the disclosure of expert testimony.  It requires

only three basic disclosures.  First, it requires the parties to disclose to the other parties the identity of any expert witness that might be called at trial.  Rule 26(a)(2)(A).  It is undisputed that plaintiffs complied with this requirement, first on February 11, 2013, and again on June 3, 2013.

Second, the Rule requires that the 26(a)(2)(A) disclosure be accompanied by the expert's report.  Rule 26(a)(2)(B).  It is undisputed that plaintiffs complied with this requirement on February 11, 2013, three months earlier than they were required to by the Pretrial Order, and again on June 3, 2013.

Third, Rule 26(e) requires parties to supplement their Rule 26(a) disclosures in a timely manner if they become aware that the disclosure is "incomplete or incorrect."  The government does not assert that this rule is applicable here.

Accordingly, plaintiffs have not failed to provide any information required by Rule 26(a) or (e) upon which a Rule 37(c)(1) sanction could be based.  Neither rule requires that plaintiffs make their expert available for deposition.[2] That requirement is contained in Rule 26(b), which states that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial."  However, the

---

[2] Defendant relies upon Carolina Cas. Ins. Co. v. Ortiz, 2009 WL 3627921 (E.D. Cal. 2009) (O'Neill, J.).  However, Carolina addressed the exclusion of expert testimony because the proponent failed to identify the expert, or to produce the expert report, in a timely manner.  Here, defendant does not challenge the timeliness of the expert disclosures.  In addition, the proffering party in Carolina failed to produce the witness for a deposition in violation of a court order requiring it to do so.  Here, there was no court order requiring the expert's deposition.

1  Rule 37(c)(1) sanction is not triggered by a violation of

2  Rule 26(b).   Accord, ICE Corp. v. Hamilton Sundstrand Corp.,

3  2007 WL 1652056 at *5 (D. Kan. 2007) (Sebelius, M.J.) ("Rule

4  37(c)(1) only allows for the relief plaintiff seeks if either

5  Rule 26(a) or (e)(1) have been violated, not Rule 26(b)").[3]

6      Of course, a remedy was available to the government for any

7  unjustified failure by plaintiffs to comply with Rule 26(b).

8  Specifically, had the government sought a deposition immediately

9  after the designation, rather than sitting on its hands for five

10 weeks, it could have sought a court order compelling the

11 deposition. See Fed. R. Civ. P. 37(a)(1).  Had plaintiffs failed

12 to comply with any resulting court order, the court could then

13 impose any just sanction against plaintiffs, including dismissal

14 of the case.  See Fed. R. Civ. P. 37(b)(2).  The government

15 offers no explanation for why this court should depart from the

16 plain language of Rule 37(c)(1) by imposing a sanction under that

17 Rule that is not provided for by that Rule – particularly in

18 light of the actual remedy that was available to the government.[4]

19 

20 [3] The cases the government cites tend to confirm the plain
   meaning of the rule, or were not even decided under

21 Rule 37(c)(1). See Von Brimer v. Whirlpool Corp., 536 F.2d 838,
   843 (9th Cir. 1976) (material was properly excluded under

22 Rule 37(b)(2) for violation of the court's discovery order);
   Hoffman v. Construction Protective Services, Inc., 541 F.3d 1175,

23 1179 (9th Cir. 2008) ("'Rule 37(c)(1) gives teeth' to the
   Rule 26(a) and (e) disclosure requirements 'by forbidding the use

24 at trial of any information required to be disclosed by Rule
   26(a) that is not properly disclosed'") (quoting Yeti by Molly,

25 Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th
   Cir. 2001)).

26 

27 [4] Even if the court had found that Rule 37(c)(1) were applicable
   here, the preclusion of all evidence from plaintiffs' experts

28 would be too harsh a sanction under the circumstances.  If the

                                10

government is able to meet its initial burden to show that the injury in this case occurred in Spain, the exclusion of all of plaintiffs' experts – especially Dr. Meis's opinion that the injury did <u>not</u> occur in Spain – would deal a death-blow to plaintiffs' case, and effectively be a dismissal of the case. Under Ninth Circuit law, where the sanction would amount to dismissal of the claim, "the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions." <u>R & R Sails, Inc. v. Insurance Co. of Pennsylvania</u>, 673 F.3d 1240, 1247 (9th Cir. 2012) (citations omitted). The facts currently before the court plainly show no willfulness, fault or bad faith on the part of plaintiffs.

Rather, after sitting on its hands for over five weeks after the experts were designated, the government first broached the possibility of taking expert depositions on July 8, 2013, while plaintiffs' counsel was in New York, away from his California offices, and defending depositions being taken by the government in this case. Declaration of Gregory Broderick dated August 12, 2013 ("Broderick Decl.") (ECF No. 37) Exh. 1 (ECF No. 37-1). It did not serve the deposition notices until July 10, 2013, while plaintiffs' counsel was still travelling. Plaintiff was not able to return to his office until Friday July 12, 2013, and he responded to the government's deposition notices that day.

The government's July 10, 2013 notices of depositions scheduled the depositions for July 15 and 17, 2013, just three and five business days later, and demanded the production of each expert's "entire file," even though the government knew that plaintiffs' counsel was in New York and that his four experts "were located across the country, and spread out from New Mexico to North Carolina." Broderick Decl. ¶ 4.

It may well be that despite the pressure put on plaintiffs' counsel by his travel, and the absurdly short notice given by the government, he should have filed a motion for a protective order, rather than simply not comply with the notices of deposition. However, the court can see no willfulness, fault or bad faith in the conduct of plaintiffs' counsel. The court's view is bolstered by the language of government's counsel, in his communications with plaintiffs' counsel, which clearly indicated that the government did not view the noticed dates as real dates. Rather, the government's counsel explained that he was only protecting himself from the "looming" deadlines, but that he fully expected the depositions to be taken later in July, after the discovery cut-off date.

## 2.   Rule 37(d).

The government also relies on Rule 37(d) to exclude the evidence from plaintiffs' experts.  That provision addresses the failure to appear for depositions of the party itself, and has nothing to do with expert depositions (or the depositions of any other non-party):

> The court where the action is pending may, on motion, order sanctions if … a party or a party's officer, director, or managing agent – or a person designated under Rule 30(b)(6) or 31(a)(4) – fails, after being served with proper notice, to appear for that person's deposition.

Fed. R. Civ. P. 37(d)(1)(A)(i).[5]  The government has offered no explanation nor any authority for the proposition that this rule applies to expert depositions.

## IV.   ANALYSIS – FTCA CLAIM

### A.   Sovereign Immunity – Claims Arising in a Foreign Country.

The Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity from tort suits for damages.  28 U.S.C. § 1346(b)(1); Sosa v. Alvarez-Machain, 542 U.S. 692, 700 (2004).  With certain exceptions, the FTCA "render[s] the Government liable in tort as a private individual would be under like circumstances."  Id. (nested quotation marks omitted).  The FTCA specifies that "the law of the place where the act or omission occurred" governs the question of liability.  28 U.S.C.

---

[5] The provision also addresses a party's failure to responds to proper interrogatories or requests for inspection.  Fed. R. Civ. P. 37(d)(1)(A)(ii).

§ 1346(b)(1); <u>Molzof v. U.S.</u>, 502 U.S. 301, 305 (1992) ("the extent of the United States' liability under the FTCA is generally determined by reference to state law"); <u>Liebsack v. U.S.</u>, 731 F.3d 850, 855 (9th Cir. 2013) (same).

One exception to this waiver of sovereign immunity is for any "claim arising in a foreign country."  28 U.S.C. § 2680(k). Although the FTCA is a waiver of sovereign immunity and therefore jurisdictional in nature, plaintiffs meet their burden by identifying the waiver, and making a claim not facially covered by any exception.[6]  <u>Prescott v. U.S.</u>, 973 F.2d 696, 701 (9th Cir. 1992).  After plaintiff has done that much, "[t]he United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." <u>Prescott</u>, 973 F.2d at 702; <u>accord</u>, <u>Bolt v. U.S.</u>, 509 F.3d 1028, 1032 (9th Cir. 2007) (regarding the discretionary function exception to the FTCA, "[t]he government bears the burden of proving" that the exception applies).[7]  Otherwise, "placing the burden on the plaintiff would 'impose upon the plaintiff the burden of proving [thirteen] negative averments.  Such a result

_____

[6] <u>See, e.g.</u>, <u>Richardson v. U.S.</u>, 943 F.2d 1107, 1113-14 (9th Cir. 1991) (if an exception to the waiver of sovereign immunity applies, the court must dismiss the case for lack of subject matter jurisdiction).

[7] <u>Contra</u>, <u>Smith v. U.S.</u>, 702 F. Supp. 1480, 1481 (D. Or. 1989) ("In order to establish jurisdiction under the FTCA, plaintiff has the burden to demonstrate that her case falls within the parameters described by 28 U.S.C. § 1346(b) and that it does not fall within any of the FTCA's exceptions to the limited waiver of sovereignty by the United States"), <u>aff'd on other grounds</u>, 953 F.2d 1116 (9th Cir. 1991) (not discussing the burden issue), <u>aff'd</u>, 507 U.S. 197 (1993) (not discussing the burden issue).

1  would border on the preposterous.'"  Prescott, 973 F.2d at 702,

2  quoting Stewart v. United States, 199 F.2d 517, 520 (7th

3  Cir. 1952).[8]

4      To establish the exception, the government must show that

5  the claim "arises" in a foreign country.  To do that, it must

6  show that the "injury" occurred in a foreign country, regardless

7  of where the negligence occurred:

8          We therefore hold that the FTCA's foreign
           country exception bars all claims based on
9          any injury suffered in a foreign country,
           regardless of where the tortious act or
10         omission occurred.

11     Sosa, 542 U.S. at 712.  Therefore, it is the government's

12  burden to show that the injury occurred in Spain.  The government

13  asserts that the foreign country exception applies here because

14  "[t]here is no question that the injuries alleged here –

15  premature birth and the alleged resulting complications –

16  occurred in Spain."  Motion For Summary Judgment ("Motion") (ECF

17  No. 34) at 7.

18     The government is only half right, however.  The government

19  is correct that it is undisputed that the premature birth

20

21  [8] The Ninth Circuit would later disapprove Stewart for treating
    the FTCA exceptions like waivable affirmative defenses.  See
22  Richardson, 943 F.2d at 1113 (Stewart "thus viewed the
    discretionary function exception as a waivable affirmative
23  defense rather than an impairment of its power to adjudicate.
    This view of the Federal Tort Claims Act and its exceptions,
24  however, is not followed in this circuit, or any other circuit
    including the Seventh"), cert. denied, 503 U.S. 936 (1992).
25  However, the Ninth Circuit has not retreated from its view that
    the government bears the burden of establishing the applicability
26  of any claimed exception.  See, e.g., Terbush v. U.S., 516 F.3d
    1125, 1128 (9th Cir. 2008) ("[t]he United States bears the burden
27  of proving the applicability of the discretionary function
    exception").

28

1  occurred in Spain.  However, there is a question about where the

2  <u>injury</u> arose.  Indeed, it is the most hotly contested material

3  fact in the case so far, and it precludes summary judgment on the

4  foreign claim exception to the FTCA.[9]  Contrary to the

5  government's assumption, the premature birth is not alleged to be

6  the injury, even though it, together with Ms. Holt's two prior

7  premature births, allegedly put S.H. at high risk for injury.

8      The actual alleged injury is S.H.'s cerebral palsy and other

9  medical complications, which defendant has failed to show, with

10  undisputed evidence, "occurred" in Spain.  In fact, while

11  defendant has submitted thirteen Undisputed Facts, none of them

12  asserts that S.H.'s injuries occurred in Spain.  Moreover,

13  although it is not plaintiffs' burden, plaintiff's expert opined

14  that the cerebral palsy – the injury – did not exist until after

15  the plaintiffs returned to the U.S.

16              **1.   The premature birth.**

17      The crux of the government's foreign claim exception

18  argument is that S.H.'s premature birth took place in Spain.  The

19  government even identifies the "premature birth" as one of the

20  _____

21  [9] The government insists that it is "undisputed" that the injury
    occurred in Spain, and that plaintiffs "admitted" that the injury

22  occurred in Spain.  At oral argument, counsel for the government
    insisted that plaintiffs' counsel would admit that "fact" if

23  queried by the court.  Unsurprisingly, upon questioning by the
    court, plaintiffs' counsel <u>denied</u> that the injury occurred in

24  Spain, consistent with plaintiffs' view as expressed in their
    briefs and declarations.  What is undisputed, is that a doctor in

25  Spain <u>told</u> plaintiffs that their daughter had cerebral palsy.
    However, plaintiffs' clear, plain and repeated assertion –

26  supported by their declarations and their expert witness – is
    that the doctor was mistaken, and that the cerebral palsy did not

27  occur until after the family had left Spain.

28

                            15

two injuries plaintiffs suffered.  <u>See</u> Motion at 7.  But nowhere
in the Complaint do plaintiffs allege that the premature birth
was an "injury."  This is not, after all, a "wrongful birth" or
"wrongful life" case.[10]

Rather, plaintiffs specify that the principal injury
suffered by S.H. is her cerebral palsy, resulting in her
significant physical and cognitive deficits, "pain and suffering,
anguish, embarrassment and humiliation," the need for life-long
care and rehabilitation and loss of earning capacity, all of
which resulted from defendant's alleged negligence in failing to
prepare Ms. Holt and her foreign doctors for the dangers inherent
in the pregnancy.  Complaint ¶ 12.  Perhaps to emphasize that
plaintiffs are not claiming that the premature birth itself is an
"injury" – at least not to S.H. herself – plaintiffs twice allege
the fact of the premature birth, followed by a statement that
S.H. suffered damages as "hereinafter" set forth.  Complaint ¶¶ 9
& 11.

**2.   The complications arising from the premature birth.**

The injuries plaintiffs are suing over are the complications
alleged to have arisen from the premature birth, most notably,
cerebral palsy.  The government asserts that these injuries arose
in Spain, because that is where the premature birth occurred.
The government's assertion suffers from a very serious flaw,
namely, it simply assumes that the cerebral palsy (and other

---

[10] <u>See, e.g.</u>, <u>Jones v. U.S.</u>, 127 F.3d 1154 (9th Cir. 1997)
("wrongful life" claim under the FTCA), <u>cert. denied</u>, 524 U.S.
946 (1998).

1   complications) – the injury – occurred at the time of birth.  In

2   fact, when the injury occurred is a matter to be determined on

3   the basis of the applicable law, once the facts are established.

4   By simply assuming a time frame for the injury, the government

5   does not even discuss the applicable law on when and where an

6   injury "occurs," even though that is the main issue in

7   determining whether the foreign claim exception applies.

8                       **a.    What law applies?**

9        The FTCA specifies that the government is liable "in

10  accordance with the law of the place where the act or omission

11  occurred."  28 U.S.C. § 1346(b)(1).  The "act or omission," in

12  turn, refers to the "negligent or wrongful act or omission" that

13  caused the injury.  <u>Id.</u>  Accordingly, in an FTCA negligence

14  action, the court applies the law of the place where the

15  negligence occurred.  <u>Richards v. U.S.</u>, 369 U.S. 1, 10 (1962)

16  ("We conclude that Congress has, in the Tort Claims Act, enacted

17  a rule which requires federal courts, in multistate tort actions,

18  to look in the first instance to the law of the place where the

19  acts of negligence took place").  The Complaint alleges that the

20  acts of negligence took place solely in California, at Travis AFB

21  and Edwards AFB.  Therefore the law of California governs the

22  government's liability.

23                  **b.    When and where did the injury occur?**

24       Under California law, "injury" is defined "as the point at

25  which appreciable harm [from the negligence] was first

26  manifested.  To be 'manifested,' the damage from the negligence

27  must ha[ve] made itself known in some outward fashion."  <u>Katz v.</u>

28  <u>Children's Hosp. of Orange County</u>, 28 F.3d 1520, 1526 (9th

1  Cir. 1994) (citations and some internal quotation marks omitted).

2  Since the alleged injury to S.H. is her cerebral palsy, along

3  with other complications, her "injury" occurred when that

4  condition "made itself known in some outward fashion."

5      The government's motion does not address when S.H.'s

6  cerebral palsy first manifested itself.  To the contrary, it

7  lists thirteen "material" facts, none of which address when or

8  where plaintiff's injury – her cerebral palsy – occurred.  <u>See</u>

9  Material Facts.[11]  Instead, the government's motion relies upon an

10  inference the government asks the court to draw from the

11  following undisputed facts: plaintiffs' alleged injuries are the

12  result of S.H.'s condition (presumably, this refers to her

13  cerebral palsy); plaintiffs allege that S.H.'s condition is a

14  result of her premature birth; and the premature birth occurred

15  in Spain.  <u>Id.</u> ¶¶ 7-9; Reply in Support of Motion for Summary

16  Judgment ("Reply") (ECF No. 49) at 2.

17      The government's reasoning is faulty.  The fact that the

18  injury was a <u>result</u> of the premature birth does not mean that the

19  injury took place <u>at the same time</u> (or in the same place) as the

20  premature birth.  In <u>Katz</u>, for example, plaintiffs sued the Red

21  Cross and others for a negligent blood transfusion that occurred

22  in 1983, and that infected the plaintiff (a minor) with HIV.

23  <u>Katz</u>, 28 F.3d at 1523.  However, the HIV infection was not

24  "manifested" until an HIV test in 1988 revealed it.  <u>Id.</u> at 1526.

25  The Ninth Circuit, applying California law, held that the

26  _____

27  [11] Plaintiffs agree that each of the government's irrelevant facts
   are "undisputed," except for the specific cause of S.H.'s
   cerebral palsy.  <u>See</u> Plaintiffs' Statement Disputing Defendant's
28  Separate Statement of Material Facts (ECF No. 36-1).

1   "injury" did not occur when the negligent act occurred (the

2   transfusion), and not even when the infection occurred (the same

3   time as the transfusion), but rather in 1988, when the infection

4   first manifested itself.  Id.

5       Defendant responds that the claim arose when the injury

6   "occurred," not when it was "diagnosed," citing a Tenth Circuit

7   case decided in 1967.  See Manemann v. U.S., 381 F.2d 704, 705

8   (10th Cir. 1967).  Apart from the fact that Manemann did not

9   interpret the California law that governs here, it is not clear

10  how that case would lead to a different result in any event.  In

11  Manemann, the negligence occurred in Taiwan, with a misdiagnosis

12  that plaintiff did not have tuberculosis.  Based upon the place

13  the negligence occurred – and expressly not concerning itself

14  with where the injury occurred – the Tenth Circuit held that the

15  "claim is thus dependent upon the law of Taiwan, a foreign

16  country, and falls within the exclusionary provision of

17  section 2680(k)."  Assuming Manemann was correctly decided, it

18  was decided upon the principle that the waiver of sovereign

19  immunity did not permit the liability of the United States to be

20  determined by the law of a foreign nation.  See U.S. v. Spelar,

21  338 U.S. 217, 221 (1949) ("though Congress was ready to lay aside

22  a great portion of the sovereign's ancient and unquestioned

23  immunity from suit, it was unwilling to subject the United States

24  to liabilities depending upon the laws of a foreign power").  The

25  case has nothing to do with the distinction between where the

26  negligence occurred (which determines which law applies), and

27  where the injury occurs (which determines where the claim

28  arises).

1    In addition, the government's argument is predicated upon

2 its mis-statement of plaintiffs' arguments.  Plaintiffs do not

3 argue that the claim arose where the injury was "diagnosed," but

4 rather where it "occurred."  Plaintiffs assert that the cerebral

5 palsy did not develop in S.H. until after plaintiffs returned to

6 the United States.

7                    **c.   Dr. David Griesemer.**

8    Defendant cites plaintiffs' own evidence – an Affidavit

9 filed by plaintiffs' expert, Dr. Griesemer – for the proposition

10 that plaintiffs "were told by a doctor in Spain [Dr. Shales] that

11 S.H. had cerebral palsy."  Reply at 3 n.2.  This appears to be

12 the only evidence the government relies upon for when and where

13 the injury occurred.  However, Dr. Griesemer's very next sentence

14 is: "As a pediatric neurologist, based upon my training and 28

15 years of clinical experience as a specialist, I disagree with Dr.

16 Shales' opinion; there is insufficient basis for a diagnosis of

17 CP at the time of the evaluation at 7 months of age. …  At best,

18 Dr. Shales' diagnosis reflects only a risk that S.H. could

19 develop CP."  ECF No. 40-2 at 2.  Dr. Griesemer goes on to state:

20 "At the time of Dr. Shales' opinion in Rota Spain to the effect

21 that S.H. had CP, she was not demonstrating any of the

22 impairments that are the indicia of spastic CP that she would

23 later manifest.  As a pediatric neurologist with expertise in the

24 diagnosis and treatment of CP, it is my opinion that the motor

25 impairment that characterizes spastic CP <u>was not yet present in

26 S.H. while she was in Spain.</u>"  <u>Id.</u> (emphasis added).

27    Defendant objects to Dr. Griesemer's declaration (even

28 though they rely on it), on the grounds that the opinions stated

1  there are not included in his expert report.  Dr. Griesemer's

2  (redacted) report was filed by plaintiffs.  See ECF No. 46.

3  Indeed, that report does not contain the specific opinions set

4  forth in Dr. Griesemer's affidavit.

5      However, there is no basis for excluding the affidavit.

6  Since it is the government's burden to establish that the injury

7  occurred in Spain, plaintiffs are not required to make disclosure

8  of its expert's opinion rebutting that showing until thirty (30)

9  days after defendant has made its own disclosure on the issue.

10  Fed. R. Civ. P. 26(a)(2)(D)(ii).  Defendant, as far as the docket

11  discloses, has made no such disclosure.  Rather, it has disclosed

12  only two experts, neither of whom, according to the Expert

13  Witness Disclosure Statements, will testify about where the

14  injury occurred, or where the cerebral palsy began or first

15  manifested itself, or anything remotely related to that issue.

16  See ECF Nos. 27 & 29.  If defendant plans on putting on an expert

17  to opine that the injury occurred in Spain, it has not yet made

18  that disclosure, and therefore the time for plaintiffs to submit

19  an expert report on the subject has not yet occurred.  (If

20  defendant never puts on such an expert, then they will not meet

21  their burden of showing that the foreign claim exception applies,

22  even without Dr. Griesemer's evidence.)

23      **B.   Failure to Exhaust re Travis AFB Negligence.**

24      Defendant asserts that plaintiff's claims as they relate to

25  any negligence at Travis AFB are barred because they failed to

26  file an administrative claim within the "jurisdictional"

27  limitations periods of 28 U.S.C. § 2401.  Section 2401(a) bars

28  FTCA claims unless filed "within six years after the right of

21

1   action first accrues."  28 U.S.C. § 2401(a); <u>Wong v. Beebe</u>, 732

2   F.3d 1030, 1041 n.4 (9th Cir. 2013) (setting forth limitations

3   and exhaustion requirements).  Section 2401(b) bars FTCA claims

4   unless "presented in writing to the appropriate Federal agency

5   within two years after such claim accrues."  28 U.S.C. § 2401(b);

6   <u>Wong</u>, 732 F.3d at 1033.  The alleged failure to warn occurred in

7   1997, but the administrative claim was filed in 2006, and the

8   lawsuit was filed in 2011.

9       Plaintiffs respond that, as alleged in the complaint, they

10   did not become aware of the injury until it manifested itself in

11   2006, the same year they filed their administrative claim.  They

12   assert that the statute of limitations was tolled until

13   discovery, citing <u>U.S. v. Kubrick</u>, 444 U.S. 111, 119-22 (1979),

14   and <u>Davis v. U.S.</u>, 642 F.2d 328, 331 (9th Cir. 1981) (limitations

15   period is tolled until plaintiff becomes aware of the injury),

16   <u>cert. denied</u>, 455 U.S. 919 (1982).  Defendant offers no reply to

17   this.

18       Plaintiffs are clearly correct.  Negligence without an

19   injury is not a claim.  The claim accrues only once the injury

20   occurs.  In this case, the injury allegedly occurred in 2006,

21   even though the negligence first occurred in 1997.

22       In addition, plaintiffs argue that there <u>was</u> no injury until

23   2006 – as per Dr. Griesemer – when plaintiffs returned to the

24   U.S. and the cerebral palsy developed.  Accordingly, there was no

25   possibility of suing until 2006.

26           **C.   Causation.**

27       The government's entire third argument is principally a red

28   herring.

### 1.    Travel to Spain.

The government asserts that there is no evidence that the premature birth was caused by the government's approval of the Holts' request for "sponsored" travel to Spain.

Assuming this is correct, it completely misses the point. Plaintiffs are arguing that the negligence was the failure to warn, the failure to enroll Ms. Holt in a special program for high-risk pregnancies, and the failure to ensure that Ms. Holt would have appropriate care once she arrived in Spain.  There is no allegation that Ms. Holt's travel to Spain caused the injury, nor the government's "approval" of her travel.

### 2.    Spain caused the cerebral palsy?

Defendant next asserts that "plaintiffs lack the required expert testimony to prove that the early birth and cerebral palsy occurred because she [Ms. Holt] was in Spain."

Once again, the government misses the point.  Plaintiffs do not allege that the premature birth or the cerebral palsy occurred because Ms. Hold was in Spain.  They allege that the cerebral palsy occurred because of negligent medical treatment, failures to warn, and failure to enroll Ms. Holt in appropriate programs for high-risk births, all of which occurred at Travis AFB and Edwards AFB, in the United States.  Plaintiffs do not allege that the injury would have been avoided if S.H. had been born in the U.S. (or anywhere else).

### 3.    Preterm labor caused the cerebral palsy?

Defendant finally asserts that plaintiffs cannot prove that Ms. Holt's preterm labor caused the premature birth which, in

1  turn, caused the cerebral palsy.

2      Plaintiffs do not allege simply that preterm labor caused

3  the injuries.  They allege that negligent medical treatment in

4  the U.S. caused the injuries.  Further, the crux of plaintiffs'

5  claims is not that negligence caused the preterm labor or the

6  premature birth.  Rather, defendant's negligence was in failing

7  to warn and prepare plaintiffs for the likely high-risk,

8  premature birth, causing the injuries.  In other words, if

9  plaintiffs had been properly prepared for the premature birth,

10 rather than negligently advised about it, the injuries would not

11 have occurred.

12          **4.   Causation, generally.**

13     Plaintiffs will have the burden at trial of proving

14 causation.  Defendant has not shown that plaintiffs can produce

15 no admissible evidence on causation.  At a minimum, plaintiffs

16 have the expert testimony of Dr. Paul J. Meis.  ECF No. 46-1.

17 Dr. Meis's opinion is that the injuries could have been prevented

18 if the medical personnel involved had known about and prepared

19 for the high-risk premature birth.  Id.  This alone is sufficient

20 to show causation.

21     Defendant moves to exclude Dr. Meis because his testimony is

22 "irrelevant."  Motion To Exclude Testimony (ECF No. 35).  In

23 fact, the testimony is directly relevant to causation.  Defendant

24 presumably thinks the opinion is wrong, but that does not make it

25 irrelevant.

26     **V.   CONCLUSION**

27     For the reasons set forth above:

28          1.   The government's motion for summary judgment is

24

1   **DENIED**;

2          2.   The government's motion to exclude evidence is

3   **DENIED**; and

4          3.   All previously scheduled dates are hereby

5   **CONFIRMED.**

6      IT IS SO ORDERED.

7      DATED:   November 18, 2013.

8

9

10

11     _____
       LAWRENCE K. KARLTON
12     SENIOR JUDGE
       UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28