UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 18 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| S. H., a minor, by her guardian ad-litem, Chantal Holt; et al.,<br><br>　　Plaintiffs - Appellees,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　Defendant - Appellant. | No. 15-15000<br><br>D.C. No. 2:11-cv-01963-MCE-DAD<br>U.S. District Court for Eastern California, Sacramento<br><br>**MANDATE** |

　　The judgment of this Court, entered April 10, 2017, takes effect this date.

　　This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

　　　　　　　　　　　　　　　　FOR THE COURT:

　　　　　　　　　　　　　　　　MOLLY C. DWYER
　　　　　　　　　　　　　　　　CLERK OF COURT

　　　　　　　　　　　　　　　　By: Craig Westbrooke
　　　　　　　　　　　　　　　　Deputy Clerk
　　　　　　　　　　　　　　　　Ninth Circuit Rule 27-7

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| S.H., a minor, by her guardian ad litem, Chantal Holt; WILLIAM KENNETH HOLT; CHANTAL HOLT, *Plaintiffs-Appellees*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *Defendant-Appellant.* | No. 15-15000 <br><br> D.C. No. 2:11-cv-01963-MCE-DAD <br><br> OPINION |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted December 15, 2016
San Francisco, California

Filed April 10, 2017

Before: Carlos F. Lucero,[*] Susan P. Graber,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Lucero;
Concurrence by Judge Graber

---

[*] The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

**Federal Tort Claims Act**

The panel vacated the district court's judgment in favor of plaintiffs who brought a Federal Tort Claims Act ("FTCA") action against the United States; held that the plaintiffs' claims arose in Spain and therefore were barred by the FTCA's foreign country exception; and remanded with instructions to dismiss for lack of subject matter jurisdiction.

Plaintiff S.H. was born prematurely while her family was stationed at a United States Air Force base in Spain, and as a consequence of her premature birth, S.H. suffered a permanent brain injury that led to a diagnosis of cerebral palsy after she returned to the United States.

The FTCA generally waives the United States' sovereign immunity from suits in torts, but the waiver is subject to certain exceptions. Under the foreign country exception, the FTCA's waiver of immunity does not apply to any claim arising in a foreign country.

The panel held that an injury is suffered where the harm first impinges upon the body, even if it is later diagnosed elsewhere. The panel concluded that the brain injury S.H. suffered at or near the time of her birth impinged upon her body in Spain; thus, that was where the plaintiffs' claims arose. The panel further held that S.H.'s cerebral palsy was derivative of the harm she sustained at birth.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Judge Graber concurred in the result. She wrote separately because, in her view, the timing and content of the administrative claim filed by plaintiffs, while they were still in Spain, foreclosed their claims under the FTCA.

## COUNSEL

John Samuel Koppel (argued) and Mark B. Stern, Attorneys, Appellate Staff; Benjamin B. Wagner, United States Attorney; Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellant.

Steven B. Stevens (argued), Steven B. Stevens APC, Los Angeles, California; Martin M. Berman, Law Offices of Martin M. Berman, Palm Springs, California; for Plaintiffs-Appellees.

## OPINION

LUCERO, Circuit Judge:

In *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), the Supreme Court held that the foreign country exception to the Federal Tort Claims Act ("FTCA") "bars all claims based on any injury suffered in a foreign country." *Id.* at 712. The Court left unanswered, however, the issue currently before us: How to determine where an injury is "suffered." We hold that an injury is suffered where the harm first "impinge[s]" upon the body, even if it is later diagnosed elsewhere. *See* Restatement (First) Conflict of Laws § 377, n.1 (1934).

Applying that test to the facts of this case, we conclude that the foreign country exception bars plaintiffs' claims. S.H., the daughter of William and Chantal Holt, was born prematurely while the family was stationed at a United States Air Force ("USAF") base in Spain. As a consequence of her premature birth, S.H. sustained a permanent injury to the white matter of her brain; she was diagnosed as suffering from cerebral palsy after the family returned to the United States. The Holts filed suit against the United States, contending that officials at a USAF base in California negligently approved the family's request for command-sponsored travel to a base in Spain ill-equipped to deal with Mrs. Holt's medical needs. They further argue that S.H.'s injury—the cerebral palsy diagnosis—first occurred upon their return to the United States. At trial, the district court agreed that the injury occurred in South Carolina and awarded damages of $10,409,700. Although we are sympathetic to the plaintiffs' situation, we agree with the United States that the injury at issue was suffered in Spain. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse.

# I

## A

Mr. Holt is a Master Sergeant in the USAF. He and his wife have four children. In 2004, when the family was stationed at Edwards Air Force Base in California, Mr. Holt was informed that he was being transferred to the USAF Air Base at Rota Naval Station in Spain. Shortly thereafter, a pregnancy test at the Edwards Air Force Base medical clinic confirmed that Mrs. Holt was pregnant with their third child.

After learning he was to be transferred overseas, Mr. Holt requested command-sponsored travel for his family. To obtain approval for this program, family members must be screened to ensure that the overseas base is capable of addressing their medical needs. Dr. Richard Stahlman, chief of the medical staff at Edwards Air Force Base, approved the Holt family's command-sponsored travel to Spain. The district court found that Dr. Stahlman knew Mrs. Holt was pregnant and had experienced two prior preterm deliveries and a miscarriage at the time he cleared her for overseas travel.

In March 2005, when Mrs. Holt was approximately twenty weeks pregnant, the family relocated to Spain. There, Mrs. Holt was treated by Dr. Dennis Szurkus, a specialist in obstetrics and gynecology at Naval Hospital Rota. During an ultrasound appointment on May 11, 2005, Dr. Szurkus determined that Mrs. Holt was exhibiting signs of preterm labor and had her transferred by ambulance to an off-base hospital—Puerto Real Hospital—where she underwent an emergency cesarean section. S.H. was born on May 12, at approximately 31 weeks gestation. She had difficulty eating and breathing and was kept in the neonatal intensive care unit for seventeen days.

In the months following S.H.'s birth, the Holts saw several doctors in Spain regarding her medical issues and expressed concern that S.H. was not developing like her two older siblings, both of whom were also born preterm. Doctors told the Holts that S.H. had strabismus, poor head control, low tone in her abdominal muscles, and significant motor and developmental delays. S.H. also experienced seizure-like symptoms, for which she was prescribed phenobarbital. When she was approximately five months old,

S.H. underwent an MRI, which showed periventricular leukomalacia, an injury to the white matter of her brain.

At around nine months of age, S.H. was evaluated by a neurologist, Dr. Lisa Smith, who found that S.H. had abnormally brisk reflexes and a mild increase in dynamic tone in her lower extremities.  Dr. Smith did not rule out cerebral palsy at that time but declined to render a diagnosis. Two other doctors in Spain did conclude that S.H. had cerebral palsy.[1]

The family returned to the United States in mid-2006. Late that year, S.H. was diagnosed with tetraplegia of all four extremities.  At the age of two, while living in South Carolina, S.H. was definitively diagnosed with cerebral palsy. It is undisputed that S.H.'s premature birth was the cause of her cerebral palsy.

**B**

In June 2006, while the Holts were still in Spain, they filed an administrative claim seeking damages from the government for S.H.'s "catastrophic neurological injuries, seizures, learning deficits, physical limitations," and "cerebral palsy."  They alleged that these injuries resulted from the negligent approval of Mrs. Holt's command-sponsored travel overseas.  The administrative claim was denied.

---

[1] Those doctors were Dr. Paul Shales, a developmental pediatrician at the Educational, Developmental and Intervention Services Clinic at Rota, and Dr. Anthony Delgado, a general pediatrician at the Rota pediatric clinic. The district court found Dr. Shales' diagnosis unreliable.

S.H. v. UNITED STATES 7

Having exhausted administrative remedies, the Holts filed the instant action in district court. The government unsuccessfully moved for summary judgment, contending that the FTCA's foreign country exception barred the Holts' medical malpractice claims. Following a bench trial, the court awarded the Holts $10,409,700 in damages. The government filed a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). The court granted the motion in part but ultimately declined to alter the damages award. The government timely appealed the amended judgment and all related interlocutory orders.

## II

We review a district court's findings of fact following a bench trial for clear error. *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1068 (9th Cir. 2015). However, "[w]hether the United States is immune from liability in a FTCA action is a question of federal law subject to de novo review." *Montes v. United States*, 37 F.3d 1347, 1351 (9th Cir. 1994) (italics omitted).

The FTCA generally waives the United States' sovereign immunity from suits in tort, "render[ing] the Government liable in tort as a private individual would be under like circumstances." *Richards v. United States*, 369 U.S. 1, 6 (1962); *see also* 28 U.S.C. § 2674. But that waiver is subject to certain exceptions. *See generally* 28 U.S.C. § 2680. Under the foreign country exception, the FTCA's waiver of immunity does not apply to "[a]ny claim arising in a foreign country." *Id.* § 2680(k).

In *Sosa*, the Supreme Court held that the foreign country exception "bars all claims based on any injury suffered in a

8                  S.H. v. UNITED STATES

foreign country, regardless of where the tortious act or omission occurred." 542 U.S. at 712. The Court noted that the foreign country exception codified Congress' "unwilling[ness] to subject the United States to liabilities depending upon the laws of a foreign power." *Id.* at 707 (alteration in original) (quoting *United States v. Spelar*, 338 U.S. 217, 221 (1949)). At the time the FTCA was passed, "the dominant principle in choice-of-law analysis for tort cases was *lex loci delicti*: courts generally applied the law of the place where the injury occurred." *Id.* at 705. Accordingly, the Court concluded that Congress likely intended the phrase "arising in" to have the same meaning in § 2680(k) as it did in state choice-of-law statutes: that is, to "express the position that a claim arises where the harm occurs." *Id.* at 711.²

The question at the center of this appeal is where S.H.'s injury was "suffered" for the purposes of the foreign country exception. *Id.* at 712. The *Sosa* opinion offers various

---

² *Sosa* recognized that Congress' intent in enacting the foreign country exception was to prevent the United States from being subjected to liability under the laws of a foreign power. *See* 542 U.S. at 707. However, the Court also acknowledged that under its interpretation of the statute, the foreign country exception would apply even "when a State's choice-of-law approach would not apply the foreign law of place of injury." *Id.* at 711. In rejecting a more selective approach, the Court noted that Congress did not write the statutory language to bar claims only "when foreign law would be applied" but rather to bar all claims "arising in" a foreign country. *Id.* The Court further reasoned that even if such a meaning could be inferred from the language of the statute, it would result in "a scheme of federal jurisdiction that would vary from State to State, benefiting or penalizing plaintiffs accordingly." *Id.* Thus, a consequence of the Court's decision in *Sosa* is that the foreign country exception will sometimes bar suits that would not have triggered the application of foreign law.

S.H. v. UNITED STATES 9

formulations of *lex loci delicti*, but provides little guidance on this specific issue. *See, e.g.*, *id.* at 705 (claim arises "where the last act necessary to establish liability occurred; *i.e.*, the jurisdiction in which injury was received" (quoting John W. Ester, *Borrowing Statutes of Limitation & Conflict of Laws*, 15 U. Fla. L. Rev. 33, 47 (1962))); *id.* at 706 ("the place where the harmful force takes effect upon the body" (quoting Restatement (First) of Conflict of Laws § 377, n.1 (1934) (emphasis omitted))). In the ordinary case, an injury will be experienced in the same place it is inflicted, thereby obviating the need for further analysis. *See, e.g.*, *id.* at 698 (seeking damages for false arrest in Mexico). However, the inquiry becomes more complicated when, as in this case, plaintiffs allege injuries manifesting after the initial infliction of harm.

The district court concluded that state accrual law should determine where an injury is suffered. Relying on California law, it held that S.H.'s cerebral palsy occurred in the United States because it was not until the Holts arrived in South Carolina that doctors could identify S.H.'s symptoms as cerebral palsy. But as we have previously noted, "[q]uestions of interpretation under the [FTCA's] exclusion provisions are controlled by federal law." *Ramirez v. United States*, 567 F.2d 854, 856 (9th Cir. 1977); *accord United States v. Neustadt*, 366 U.S. 696, 706 (1961) ("[W]hether [a] claim is outside the intended scope of the Federal Tort Claims Act . . . depends solely upon what Congress meant by the language it used . . . ."). The district court acknowledged this principle as a general matter but concluded that because California law governed the United States' liability under 28 U.S.C. § 1346(b)(1), it also determined where the Holts' claims arose. However, § 2680(k) states that § 1346(b) "shall not apply to" any claim falling within the foreign country exception.

The district court also failed to recognize that the question of when a claim accrues for statute of limitations purposes is analytically distinct from the question of where a claim arises under the foreign country exception. *See Manemann v. United States*, 381 F.2d 704, 705 (10th Cir. 1967) ("[I]n the case at bar we are not concerned with either the time or place of an accrued cause of action for the purpose of applying a statute of limitations or a principle of conflict of law. We are concerned only as to whether appellant's claim arose in a foreign country within the contemplation of section 2680(k) . . . ."); *In re Joint E. & S. Dist. Asbestos Litig.*, 721 F. Supp. 433, 435 (E.D.N.Y. & S.D.N.Y. 1988) (stating that the "last event" required to establish liability "is not necessarily plaintiff's discovery of his illness; so to hold would be to confuse the beginning of plaintiff's cause of action with the beginning of its end, i.e., with the starting of the statute of limitations" (internal quotation marks omitted)). There may be some overlap in the standards applied to these questions. *See United States v. Kubrick*, 444 U.S. 111, 120 (1979) (recognizing that "the general rule under the [FTCA] has been that a tort claim accrues at the time of the plaintiff's injury"). But the statute of limitations inquiry is concerned with a plaintiff's knowledge, *see id.* at 118–24, to ensure that a limitations period does not lapse before a reasonably diligent plaintiff is aware of her injury, *see In re Joint E. & S. Dist. Asbestos Litig.*, 721 F. Supp. at 435 (equating "plaintiff's discovery of his illness" with the "starting of the statute of limitations"). In deciding where a claim arises under the foreign country exception, however, we are not concerned with the possibility of a blameless plaintiff losing a claim through delay. Thus, we ask only where "the last act necessary to establish liability occurred," *Sosa*, 542 U.S. at

S.H. v. UNITED STATES    11

705 (internal quotation marks omitted), without taking into account what the plaintiff knew or did not know.[3]

To determine where the Holts' claims arose for the purposes of the foreign country exception, we must therefore look to governing choice-of-law principles at the time Congress enacted the FTCA. And, as the Supreme Court held in *Sosa*, we must apply *lex loci delicti*. *Id.* The Restatement (First) of Conflict of Laws, upon which the Supreme Court relied in *Sosa*, provides that "[t]he place of wrong is . . . where the last event necessary to make an actor liable for an alleged tort takes place." § 377. The Restatement illustrates application of this rule when an individual "sustains bodily harm" as follows:

> Such a force is first set in motion by some human being. It is quite immaterial in what state he set the force in motion. It must alone or in cooperation with other forces harm the body of another. The person harmed may thereafter go into another state and die from the injury or suffer other loss therefrom. The place where this last event happens is also immaterial. The question is only where did the force impinge upon his body.

---

[3] It is for this same reason that we reject any suggestion that the Holts' administrative claim, which lists "cerebral palsy" as an injury caused by the USAF's negligence, establishes that S.H. had cerebral palsy in Spain. Where an injury is suffered for the purposes of the foreign country exception is an objective inquiry, one that does not depend on what the Holts knew at a particular time.

12          S.H. V. UNITED STATES

*Id.* § 377, n.1.  Thus, an injury "occurs" where it is first suffered, even if a negligent act later results in further or more serious harm.  *Accord Williams v. Gyrus ACMI, Inc.*, 790 F. Supp. 2d 410, 415 (D. Md. 2011) (holding that plaintiff's injury occurred for purposes of *lex loci delicti* at the time shim was left in her body, "even if she did not begin to experience pain or other symptoms from the shim's presence until she relocated" to another state).

It is undisputed that S.H.'s cerebral palsy resulted from the brain injury she sustained in Spain as a consequence of her premature birth.  The district court held that the Holts' claims arose in the United States because that is where S.H.'s cerebral palsy definitively manifested itself.  In reaching that determination, the court distinguished between S.H.'s brain injury and her cerebral palsy diagnosis, reasoning that because plaintiffs were suing to recover for the latter harm, and cerebral palsy is not a disease but rather a collection of symptoms, plaintiffs' claims could not have arisen prior to those symptoms being present and diagnosable.  But S.H.'s premature birth caused appreciable injury while the Holts were in Spain, even if cerebral palsy was not definitively diagnosed in that country.  Under *lex loci delicti*, as it was interpreted at the time of the FTCA's passage, the fact that a plaintiff suffers some "other loss" in a different jurisdiction is "immaterial."  Restatement (First) Conflict of Laws § 377, n.1.  "The question is only where did the force impinge upon [her] body."  *Id.*  The undisputed facts of this case indicate that the force—the brain injury S.H. suffered at or near the time of her birth—impinged upon her body in Spain; thus,

S.H. V. UNITED STATES                    13

that is where the Holts' claims arose.  *See Sosa*, 542 U.S. at 705–06.[4]

Our conclusion is consistent with the application of the foreign country exception by other federal courts.  In *Thompson v. Peace Corps*, 159 F. Supp. 3d 56 (D.D.C. 2016), the court held that the foreign country exception barred the plaintiff's FTCA claims, which were based on injuries she sustained as a result of taking an anti-malarial drug in Burkina Faso.  *Id.* at 61.  The court reasoned that although the plaintiff "complain[ed] of continuing side effects after her return home," as well as "a permanent brain injury," the court lacked jurisdiction because the "claims based on those injuries arose out of the administration of mefloquine in BurkinaFaso."  *Id.* at 58, 61.  Similarly, the District of Columbia Circuit has twice held that a district court lacked jurisdiction over a plaintiff's claims for emotional or

---

[4] We recognize that courts have sometimes interpreted *lex loci delicti* to different effect in the context of long-latency diseases.  *See, e.g.*, *Pounders v. Enserch E&C, Inc.*, 306 P.3d 9, 13 (Ariz. 2013) (noting that "[f]or long-latency diseases, the 'last event' takes place when the disease is discoverable because, until then, a legally compensable injury does not exist"); *Trahan v. E.R. Squibb & Sons, Inc.*, 567 F. Supp. 505, 507–08 (M.D. Tenn. 1983) (rejecting argument that "last event" occurred when plaintiff's mother ingested DES, absent any evidence that "improper development of the plaintiff's cervix occurred immediately upon her mother's ingestion of the drug").  But in those cases, there was no evidence that the plaintiffs' exposure to a toxic substance resulted in any immediate harm beyond the cellular level.  By comparison, S.H.'s brain injury, resulting from her premature birth, had appreciable effects while the Holts were living in Spain.  *See In re "Agent Orange" Prod. Liab. Litig.*, 580 F. Supp. 690, 707 (E.D.N.Y. 1984) (explaining, for purposes of *lex loci delicti*, that "harmful force" of Agent Orange affected military service members immediately, even though "many of the more serious symptoms did not manifest themselves until years later").

14          S.H. V. UNITED STATES

economic injuries occurring in the United States because those injuries were derivative of harm suffered abroad by the plaintiffs' spouses. *See Gross v. United States*, 771 F.3d 10, 13 (D.C. Cir. 2014) (holding that foreign country exception applied because wife's economic injuries in the United States were derivative of injuries husband suffered as a result of imprisonment in Cuba); *Harbury v. Hayden*, 522 F.3d 413, 423 (D.C. Cir. 2008) (holding that foreign country exception applied to claims for emotional injuries that wife suffered in United States but that resulted from physical abuse and death of husband in Guatemala). In both cases, the court expressed concern that plaintiffs would be able to "plead around the FTCA's foreign-country exception simply by claiming injuries . . . that are derivative of the foreign-country injuries at the root of the complaint." *Harbury*, 522 F.3d at 423.

Like the injuries alleged in these cases, S.H.'s cerebral palsy is derivative of the harm she sustained at birth. As the Holts recognize, cerebral palsy is not itself a disease, but rather a group of non-progressive motor conditions. It is therefore a description of symptoms manifesting from S.H.'s brain injury, rather than a separate, compensable harm. Moreover, to hold that the Holts' claims did not arise until cerebral palsy could be definitively diagnosed would enable plaintiffs in similar circumstances to avoid application of the foreign country exception, either by pleading their injuries in a particular way or by relocating to the United States before obtaining a diagnosis. *Cf. Sosa*, 542 U.S. at 702–03 (rejecting idea that "allegations of negligent medical care . . . can . . . be repackaged as headquarters claims based on . . . the offering of bad advice" in the United States, even though harm is suffered overseas, because the practice would "swallow the foreign country exception whole" (citations omitted)); *Harbury*, 522 F.3d at 423 (prohibiting plaintiffs

S.H. v. United States     15

from "plead[ing] around" the foreign country exception by claiming domestic injuries "that are derivative of the foreign-country injuries at the root of the complaint"). Jurisdiction under the FTCA cannot turn on whether the Holts framed their suit as seeking damages for S.H.'s cerebral palsy or the brain injury she sustained at birth.

### III

Because the Holts' claims against the United States arose in Spain, the FTCA's foreign country exception bars their suit. Accordingly, the district court's order is **VACATED**, and we **REMAND** the case with instructions to dismiss for lack of subject matter jurisdiction.[5] The parties shall bear their own costs on appeal.

---

GRABER, Circuit Judge, concurring in the result:

I concur in the result reached by the majority opinion. I write separately because, in my view, the timing and content of the administrative claim filed by Plaintiffs, while they were still in Spain, forecloses their claims under the Federal Tort Claims Act ("FTCA").

The FTCA requires that a plaintiff exhaust administrative remedies:

---

[5] The United States raises a number of other issues on appeal; however, our conclusion that the district court lacked jurisdiction obviates the need to address those arguments.

16         S.H. v. UNITED STATES

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . .

28 U.S.C. § 2675(a). The administrative claim need not be detailed; rather, "a skeletal claim form, containing only the bare elements of notice of accident and injury and a sum certain representing damages, suffices." *Avery v. United States*, 680 F.2d 608, 610 (9th Cir. 1982).

Although an administrative claim need not be detailed to satisfy § 2675(a), such a claim serves to exhaust only those basic theories encompassed in its scope. Of course, an FTCA plaintiff may seek a greater amount of damages than the sum certain contained in the administrative claim if "the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b). For instance, an FTCA plaintiff who files an administrative claim and later suffers additional harm flowing from the incidents described in that claim may be able to recover for the additional harm. *Richardson v. United States*, 841 F.2d 993, 998–99 (9th Cir.), *amended*, 860 F.2d 357 (9th Cir. 1988). But the plaintiff cannot come into court seeking redress on an entirely different claim.

S.H. v. United States                    17

The majority opinion correctly holds that Plaintiffs exhausted their FTCA claims. That is because those claims are encompassed by the administrative claim—that is, they relate to the same core set of facts. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) ("Under the federal system, the word 'claim' denotes the allegations that give rise to an enforceable right to relief." (internal quotation marks and brackets omitted)); *see also Khan v. United States*, 808 F.3d 1169, 1172–73 (7th Cir. 2015) ("All that must be specified [under 28 U.S.C. § 2675(a)], therefore, is facts plus a demand for money; if those two things are specified, the claim encompasses any cause of action fairly implicit in the facts." (internal quotation marks omitted)). Although it is true that some facts—such as the definitive diagnosis of cerebral palsy—occurred after the filing of the administrative claim, it is undisputed that S.H.'s cerebral palsy resulted from the brain injury that she suffered at birth, and that her brain injury was the focus of Plaintiffs' administrative claim.

S.H. was born in Spain, where the family continued to reside for more than an additional year before returning to the United States. While still in Spain, Plaintiffs filed an administrative claim seeking damages for, among other things, "catastrophic neurological injuries, seizures, learning deficits, [and] physical limitations" already suffered by S.H. as a result of her premature and difficult birth. The claim form also asserted, among other things, that "negligence on the part of medical healthcare providers, penultimately in Rota, Spain at US Naval Hospital, resulted in negligent failure to promptly recognize and treat [the mother's] abruptio placenta, causing catastrophic injuries," and that care "at USNH Rota Spain failed to conform to the standard of medical and surgical care in the community." It is clear that,

18 S.H. v. UNITED STATES

in bringing suit under the FTCA, Plaintiffs pressed the same "claim" that they had presented to the government.[1]

What this means is that Plaintiffs' claims necessarily "arose" in Spain, because a claim cannot be "presented" to the appropriate agency under 28 U.S.C. § 2675(a) until *after* it has arisen. In other words, by filing an administrative claim while still in Spain, containing allegations of a premature birth that caused brain injuries to S.H., Plaintiffs necessarily admitted[2] that *some* claims based on those facts already had arisen; because the claims in this action are the same as those presented to the government in the administrative process, those claims arose in Spain.

This would be a tragic case in any event, but the fact that it is the foreign-country exception that ultimately bars relief makes it especially tragic, as it was the alleged negligence of the United States that led to Plaintiffs' being in a foreign country in the first place. But only Congress is in a position to provide relief to Plaintiffs and those in similar situations.

---

[1] Indeed, had Plaintiffs pressed a *different* claim, that claim would not have been exhausted.

[2] I do not necessarily mean "admitted" in the sense of a binding judicial admission. *See SEC v. Caserta*, 75 F. Supp. 2d 79, 95 n.9 (E.D.N.Y. 1999) (discussing split in authority over the circumstances in which admissions made in an administrative proceeding function as judicial admissions). Rather, the timing and content of the administrative claim limit the scope of the subsequent lawsuit. So although the majority opinion is quite right that Plaintiffs' listing of "cerebral palsy" as an injury on the administrative claim does not establish that S.H. actually had cerebral palsy while still in Spain, the fact that the administrative claim is generally about brain injuries suffered at birth means that a claim related to injuries of that sort had arisen by the time the administrative claim was filed.

S.H. V. UNITED STATES 19

We are bound by *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and, therefore, are compelled to reverse the district court's judgment.